BARRY et al. v. GULFPORT BUILDING & LOAN ASS'N.

(Division B. June 2, 1930. Suggestion of Error Overruled, November 3, 1930.)

[128 So. 569. No. 28765.]

Buntin & McIntosh, of Gulfport, and **Milling, God-chaux, Saal & Milling**, of New Orleans, La., for appellants.

Gardner, Brown & Backstrom, of Gulfport, for appellee.

Argued orally by **Eugene D. Saunders** and **J. D. Arrington**, for appellant, and by **Chas. Scott Brown**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Dennis A. Barry of New Orleans, Louisiana, and a firm of lawyers of Washington, D. C., associated with him, filed a suit in the chancery court for the recovery of the fee for services rendered to the appellee in a tax proceeding before the department of the federal government dealing with income and other taxes. A contract alleged by the complainants consisted of certain correspondence passing between Dennis A. Barry and the Gulfport Building & Loan Association. These letters read as follows:

"June 23, 1927.

"Board of Directors, Gulfport Building & Loan Association, Gulfport, Mississippi.

"Attention Mr. B. C. Bowen, Secretary.

"Dear Sirs: As suggested by Mr. Bowen, your secretary, I am writing to inform you how the tax case with

the government can be handled and trust that the arrangements will meet with your approval.

"My recommendation to Mr. Bowen was that I be allowed to work with my representative in Washington, Mr. F. R. Gibbs with whom I have worked in all my tax cases and in whom I have every confidence as a lawyer and tax expert. Mr. Gibbs works on either the per diem basis or the contingent fee basis, his per diem rate charge is one hundred dollars per day, whereas his contingent fee basis of twenty-five per cent will take care of both his fee and mine. In either case you can rest assured that the same effort will be put forth to prove the Gulfport Building and Loan Association is an exempt corporation.

"In connection with this tax case the only other expense will be my traveling expenses to Washington and when necessary, to Gulfport. I feel confident that only two trips to Washington will be necessary and it will be my purpose to keep the total cost of this tax case as low as possible for the Gulfport Building and Loan Association.

"The auditing fee for getting together the data that I am now compiling should not exceed three hundred dollars. This expense is brought about due to the fact that the Association's books were never previously audited and if they had I could start the tax work from the audit reports. In other words, the Association is incurring an auditing expense at this late date that should have been previously spent had the books been audited year after year.

"On the supposition that the above meets with your approval I am enclosing herewith power of attorney granting Mr. Gibbs and I the right to handle this case for without this power of attorney we are not privileged to discuss with the government any phase of it. Please have this power of attorney sworn to and return to me as soon as possible.

"I beg to state that I am today making arrangements to confer with Mr. Gibbs on July 5th, at his office and lay the foundation of the case before him as I do not wish to lose any time in protecting the rights and best interest of the Homestead.

"Thanking you for a favorable reply to the above and assuring you we will put forth our best effort to save the Homestead from paying any income tax, I am with kindest regards,

"Yours very truly,

"DENIS A. BARRY.

"P. S. On the assumption that the above meets with your approval, Mr. Martinez of my office will be in Gulfport Monday morning to get the balance of the data I need.

"DAB; eng."

To which defendant replied under date of June 25th:

"Gulfport Building & Loan Association,

"Resources Over $1,000,000.00.

"Gulfport, Mississippi.

"June 25, 1927.

"Mr. Dennis A. Barry, 1805 Masonic Temple Building, New Orleans, Louisiana.

"Dear Mr. Barry: The matters referred to in your favor of 23rd inst. were referred to our Board of Directors yesterday afternoon. After considerable discussion it was concluded that probably we could work to a better advantage on the contingent basis suggested in your letter. However, we thought that if the matter pursued the course suggested by you, in that we decline to make a tax return, and the Government would arbitrarily place an unreasonable assessment against us, we would not feel justified in paying you on the basis of our assessment, which will probably be made without reference to our actual profits. In view of the fact that we are going on the assumption that we do not owe the Government, it would be difficult to arrive at any conclusion as to what

would be your fee. Therefore, we concluded to write you and ask that you give us a maximum fee on a contingent basis, that would be fair to each of us.

"Of course, we will be glad to see Mr. Martinez Monday and you will continue the audit without reference to the foregoing paragraph.

"With kindest regards, we are,

"Sincerely,

"Gulfport Building & Loan Ass'n,

"B. C. Bowen, Secy."

In response to this letter Barry wrote under date of June 27th:

"June 27, 1927.

"Board of Directors, Gulfport Building & Loan Assn., Gulfport, Mississippi.

"Attention Mr. B. C. Bowen, Secretary.

"Dear Sirs: This is in answer to yours of the 25th instant.

"In reference to the fee for the handling of the Income Tax cause of your Association, I beg to state that the contingent fee was expected to be predicated on the amount of income tax due by your Association strictly on its earnings and not on any 'unreasonable assessment' that the government may place against you. To make this point clearer, I will state it this way: If the earnings of the Association were taxable like any other corporation and the total tax would aggregate sixteen thousand dollars, the contingent fee was expected to be placed on that amount of tax and not on any other basis that the government would assess considering that they had the right to assess a tax other than under the law as now in effect. However, I shall be in conference in Washington next Tuesday and I will straighten out the matter of fee to your entire satisfaction. I am sure that you will find me fair in the matter.

"It will be my pleasure to communicate with you as soon as I have held the conference in Washington,

"Thanking you for your confidence in me and with kindest regards, I am

"Yours very truly,

"Dennis A. Barry.

"DAB: eng."

It was alleged that it would be necessary for the court to appoint an accountant to determine the basis upon which the fee should be calculable, and the bill prayed in the alternative that if the court should find that the letters did not constitute a contract they should be allowed a reasonable fee on basis of quantum meruit for the services rendered.

After this correspondence passed and on the 5th day of July thereafter Dennis A. Barry went to Washington and took up the matter with the firm of attorneys, who constitute the other complainants, and they construed the letters to be a contract for a contingent fee on the basis of twenty-five per cent of the taxes, and interest thereon for past years, that would have been paid by the Building & Loan Association were it taxable as other corporations for pecuniary gain. Thereafter they interviewed the officers of the department where the matter was pending and procured a postponement of the time in which to file the report on behalf of the Building & Loan Association, and for a hearing on the question of whether the Building & Loan Association was taxable. Mr. Barry, in cooperation with officers of the Building & Loan Association, got up considerable data from books of the association, and Mr. Bowen, the secretary of said association, made some trips to Washington with Mr. Barry and had conferences with the lawyer there pertaining to the matter. The adjustment of the matter before the department at Washington took considerable time and much data was collected from the books and business of the Building & Loan Association for use in these hearings. The final result was that the Building & Loan Association was held to be not liable for the income

tax, and also was not liable for the corporation stock tax claimed by the taxing department of the United States government at Washington.

The defendant answered the bill of complaint and agreed that the letters, set out above, passed between the parties and constituted a contract, but it contends that under the clause in the last letter, "however, I shall be in conference in Washington next Tuesday and I will straighten out the matter of fee to your entire satisfaction. I am sure that you will find me fair in the matter," the defendant was given the right to fix the amount of the fee on the basis of its honest judgment, and, the defendant had exercised this honest judgment and fixed the fee at three thousand dollars, which it tendered into court. The chancellor, after having the voluminous evidence offered in the case before him, held in effect that the letters did not constitute a contract fixing the amount of the fee and heard testimony as to what a reasonable fee would be, and fixed the same in the sum of three thousand seven hundred fifty dollars, from which the appellants appeal, and the defendant also cross-appeals.

It is insisted by the appellants and the appellee both that the letters do in fact constitute a contract, but they differ as to the construction of the contract as evidenced by the letters. We are of the opinion, after full consideration, that the letters do constitute a contract, and that this contract evidenced by the letters is that the appellants were to have a contingent fee of twenty-five per cent of the amount of tax which the Building & Loan Association would have paid had it been held taxable, and that the clause relied upon by the defendant does not confer upon the defendant the right to fix the amount of the fee to its satisfaction in the exercise of honest judgment but that the clause set out must be construed with the other parts of the correspondence, and the meaning determined from the same as a whole. It is clear that it was the purpose of the parties to make a contract, and

as the basis of the contract was a written correspondence the contract must be judged by the terms of the correspondence, and if a contract be deducible therefrom by proper construction it cannot be said that the minds of the parties did not meet because they construe the contract to mean different things. The parties may by writing constitute a binding contract binding themselves to the terms and conditions of the contract so reduced to writing, although they did not properly interpret the contract. It will be seen from the correspondence that Mr. Barry proposed to have Mr. F. R. Gibbs of a law firm in Washington associated with him in handling the matter and stated in his letter that Mr. Gibbs would work either upon the per diem basis or the contingent fee basis; the per diem rate was one hundred dollars per day, whereas the contingent fee basis was twenty-five per cent and would take care of the fee of both Barry and the law firm of which Gibbs was a member. In replying to this letter the Building & Loan Association expressed the preference for the contingent fee basis but expressed the fear that if they accepted the terms of the letter as written, and pursued the course suggested by Barry, and if they failed to make a return to the government the government might arbitrarily place an unreasonable assessment against the Building & Loan Association, and the association did not feel justified in paying on such basis of assessment "which will probably be made without reference to our actual profits." It was then stated that the association was going on the assumption they did not owe the government and there might be some difficulty in reaching a conclusion as to what the fee would be, and it asked for a maximum fee on a contingent basis. It is therefore clear that the Building & Loan Association desired to have the matter handled upon the contingent fee basis, and it is plain, we think, that their fear of the government placing an arbitrary assessment against

them was the basic reason for not accepting the terms in the letter.

In answering this letter of the Building & Loan Association Mr. Barry made it clear that they did not contemplate fixing a contingent fee upon any basis of arbitrary assessment or any unreasonable assessment that the government might place against the Building & Loan Association, but that the amount was expected to be predicated upon the amount of income tax due by the association strictly on its earnings and not on any arbitrary or unreasonable assessment. He said in the letter: "To make this point clearer, I will state it this way: If the earnings of the Association were taxable like any other corporation and the total tax would aggregate sixteen thousand dollars, the contingent fee was expected to be placed on that amount of tax and not on any other basis that the government would assess considering that they had, the right to assess a tax other than under the law as now in effect." He stated, however, that he would be in Washington "next Tuesday" and would "straighten out the fee to your entire satisfaction. I am sure that you will find me fair in the matter." In explanation of the letter Mr. Barry testified that he went to Washington and submitted the correspondence to Mr. Gibbs and they construed the contract to be a contingent basis upon the amount of tax that would be due the government should the Building & Loan Association be held to be taxable, and, if they were successful in getting the association relief from this tax the twenty-five per cent would be on the amount so saved the Building & Loan Association.

Mr. Gibbs testified likewise to his understanding of the correspondence to this effect: Mr. Bowen of the Gulfport Building & Loan Association, who is also an attorney at law, testified that they considered and construed the contract to mean that they would fix the fee on a reasonable basis based upon their honest judgment; and that they were influenced by the statement in the

letter that' the fee would be straightened out to their entire satisfaction.

We think it is evident that it was not the intention of the letter to leave the fixing of the fee to the Building & Loan Association's judgment. The part of the letter, ''I am sure that you will find me fair in the matter,'' and the previous statement as to the basis upon which the fee was to be predicated dispelled the idea,. we think, that the association was to fix the fee. It is not customary for contracts to be so made that the client, after the service, will be permitted to fix the amount of the fee, and while it is competent for parties to so contract should they desire we do not think the contract here fairly construed can be given that interpretation. We think, therefore, that the court should have held that the correspondence constituted a contract and fixed the fee upon the most favorable basis to the defendant, reasonably consistent with the earnings of the corporation which would have been taxed had it been held liable. The expression in the letter that the matter of fee would be straightened out to the satisfaction of the defendant makes it proper for the court to take that basis as most favorable to the defendant of the amount involved as shown by the evidence. In our judgment it should have been the amount that the Building & Loan Association would have paid had it been taxed as to the profit and the tax paid without interest and penalties, and when this amount is ascertained then the fee should be twenty-five per cent thereof for the years involved in the suit, provided the said amount does not exceed the statement rendered of seven thousand five hundred dollars which, we think, is binding upon the appellants, they having fixed this as the basis of their charge and should not be allowed to exceed it in a recovery.

The judgment of the court below will therefore be reversed, and the cause remanded for judgment in accordance with the views herein expressed.

Reversed and remanded.